Daniel Kowalski, The Fowler Law Firm, Austin, TX Thank you for this opportunity to be of service to the court today. In over 30 years of practicing citizenship, visa, and immigration law, I've never encountered a case quite like this. A decade and a half ago, the petitioners left Pakistan, fleeing religious persecution, threats of religious persecution by family members. Today, their lives are utterly different. They have a 17-year-old daughter who has DACA, Deferred Action for Childhood Arrival, status. They have a 13-year-old daughter who is a native-born U.S. citizen. Most importantly, they are divorced. The mother, Anila, has custody of the two daughters. And finally, they are eligible for DAPA, which is now pending at the Supreme Court. We'll know within six months, probably, what will happen with DAPA. I think the only prudent thing to do in this case is to remand back to the immigration judge for further fact-finding with respect to the effect of the divorce on their claims for relief. In effect, the divorce has split the case into two cases. Now, either or both or neither of the adult petitioners may be entitled to relief, depending on what an immigration judge may find as to the effect of this divorce. Anecdotally, I may note, this is not evidence, but in my encounters with my clients that— We're not interested in anything that's not in the record in this case. Thank you, Your Honor. As an alternative, the court could stay or abate the case pending the resolution of the DAPA claim, Texas v. USA, at the Supreme Court coming in the next few months. Please note that there's no criminal record at issue in this case. There's no surreptitious entry. In 2000, they entered on tourist visas. In 2005, they were paroled in at the Canadian border. As to the credibility issue in this case, I encourage the court to read the transcript very carefully of the immigration court hearing and evaluate the credibility issue. And note in particular that Professor Ruben Rumbaut, R-U-M-B-A-U-T, he's a sociology professor at the University of California at Irvine and a Cuban immigrant himself, has done longitudinal research showing that over 97% of the world's people are stayers. They stay put. They live and die where they're born. Fewer than 3% of the world's people are migrants. It takes a great deal of pressure to compel someone to migrate. And in this case, this family at the time with a 2-year-old in tow, something terrible must have compelled them to move halfway around the world and try to escape their plight. I would imagine that his statistics are stale after this past year's hundreds of thousands of immigrants leaving Syria. Things are evolving quickly, yes, and we shall see how his research bears out. Let me ask you, if nothing has changed and the daughters are here under either citizenship or DACA and the parents go back, would both parents go back separately now that they're divorced? And would the family be likely to recognize the divorce or still have its anger at the daughter for having married outside the particular religion? That's an excellent question, Your Honor, and to be honest, I do not know and I hesitate to speculate. And again, I think it's best for the immigration judge to make those findings. I will reserve my time. So there's an outstanding motion to sever and remand? At least for the daughter, yes. Well, I mean, is that different from what you're requesting, that is, to remand to the immigration judge to determine the effect of the divorce? Yes, Your Honor. It is separate and different. All right. In other words— And tell us what are the merits of that motion, to sever and remand? The daughter, the 17-year-old daughter, has DACA status, so she's effectively off the table. The government has no problem with removing her from the case, severing her. It's anticipated that DACA will continue. Her DACA status will be renewed potentially for a long time to come. So really we're down to the adult petitioners, the former husband and wife. And the effect of their divorce and the persecution that they claimed that their family members would visit upon their daughter is now, I would submit an open question, that only an immigration judge in an evidentiary hearing should evaluate. There's not enough in the record about that? No. All right. Thank you. I'll reserve. Thank you. Would you say time for rebuttal, Ms. Martin? Good morning, Your Honors, and may it please the Court. My name is Ashley Martin, and I represent the respondent in this matter. Your Honors, the government does agree that the impact of the divorce on this religious persecution claim is a question for a trier of fact. However, this Court should not remand this case to the agency for further consideration. And the reason for that is that this is a religious persecution claim that was found to be not credible in the first instance by the agency. And this Court should conclude that that adverse credibility finding is supported by substantial evidence. The law has two requirements for judicial review of adverse credibility findings. First, the immigration judge must provide specific and cogent reasons for the adverse credibility finding. Second, those reasons must be supported by the record. Here, the adverse credibility finding satisfies both of these requirements. Most significantly, petitioners Mr. Hussain and his wife, Ms. Habib, testified that they left Pakistan 11 years before and still could not return due to a continuing death threat made against them by Ms. Habib's family. Based on the nature of this persecution claim, it was crucial that Mr. Hussain and Ms. Habib provide credible and consistent testimony regarding any continued contact with Ms. Habib's family. However, Mr. Hussain and Ms. Habib failed to provide that consistent and credible testimony regarding any continued contact with her family. In particular, Mr. Hussain initially testified that his wife had had no contact with her family whatsoever since they left Pakistan in 2000. However, he subsequently changed his testimony. He was asked questions such as, well, if there's been no contact with your wife's family, how are they aware that their older grandchild is being raised in her father's religion, or in other words, the Shia faith? And he was also asked, well, if there's been no contact with your wife's family, are they aware that they have a second grandchild born in the United States? And Mr. Hussain changed his testimony and said, well, my wife is in contact with her family. And he indicated that that could be as often as on a weekly or biweekly basis. However, when further questions about this topic, Mr. Hussain ultimately stated that he really didn't know whether or not his wife had any continued contact with her family. How long had they been divorced? How long had they been divorced? Your Honor, I believe that— At the time he testified, how long had they been divorced? Your Honor, at the time of the petitioner's testimony in 2011, Mr. Hussain and Ms. Habib were still married. It's my understanding that the divorce occurred after the board issued its decision in this case. But when he testified that he didn't know how frequently, they were still in the same household. Your Honor, their testimony was that they were still married. I don't believe anybody specifically asked them whether or not they still lived in the same household. It seemed to be assumed. Certainly, neither Mr. Hussain nor his wife indicated that they no longer lived in the same household. And it was their testimony that they were still married. And that's really—it's really crucial that this claim, this whole claim, is based on the allegation that Ms. Habib's family has made a death threat against the petitioners. Eleven years later, they can't return to Pakistan because of this alleged death threat. And yet, they can't credibly testify what the nature and the extent of their contact is with the individuals who allegedly made this death threat. I described Mr. Hussain— We've seen a number of these cases where one of the explanations by the government was they don't have to go back to the same little village. There's a whole country they could go back to. Is that a situation here? Your Honor, that's something that was addressed by the immigration judge. The immigration judge noted that there was the possibility here of an empty threat. Mr. Hussain and his wife, Ms. Habib, testified that Ms. Habib's family had threatened Mr. Hussain's parents, who still lived in Pakistan, and no harm had come to Mr. Hussain's parents. And based on that, the immigration judge noted, you know, there's really nothing here to indicate that these petitioners couldn't go back to Pakistan and safely relocate elsewhere in the country. And by regulation, because there was no past persecution in this case, the petitioners did have the burden of demonstrating that they could not safely relocate elsewhere in Pakistan. However, despite the fact that the immigration judge did make that finding, that's not a finding that was discussed or adopted by the board. And this court's review focuses on the board's decision. Because the board didn't adopt that aspect of the immigration judge's decision, it's beyond the court's scope of review at this time. Your Honors, I would also like to note, with regards to the adverse credibility finding, that Ms. Habib also had significant discrepancies regarding the nature and the extent of her contact with her family. She initially testified that she had not discussed the topic of her older daughter's religion with her family since she left Pakistan in 2000. However, she later testified that she had spoken with her family about her daughter's religion twice since the family had left Pakistan, first in 2003 or 2004 when she was living in Canada. She testified that at that time she told her parents and her brother that her older daughter would be raised in her husband's religion, and they made a death threat against her and her family. She also testified that after returning to the United States in 2005, she again had some contact with her family. Again, the topic of her daughter's religion came up, and again, her family made a death threat against them. Again, the testimony was really all over the place regarding what the contact with her family was since they left Pakistan. So you're resting on the IJ's determination that it was not credible because of these differences? Yes, Your Honor, we are, and the reason for that is that that's the finding that was adopted and affirmed by the Board in this case. And as regards to subsequent divorce, I just want to make sure I understand, your position in that connection is simply that the divorce and the fact that they are now divorced doesn't affect the determination of our credibility one way or the other? Yes, Your Honor, and the divorce is an intervening circumstance. It happened after this case was heard on the facts. There's nothing in the record about the impact of the divorce, but that does not necessitate a remand here because there's no need to remand a case to consider the impact of an intervening circumstance on a persecution claim that was found to be not credible to begin with. Your Honors, if there are no further questions regarding credibility, the government would like to note that there is a due process argument that was raised in the petitioner's brief, in particular that Ms. Habib was not adequately questioned regarding some of the topics discussed in the immigration judge's decision. However, that claim was wholly unexhausted before the agency. The petitioners could have raised that argument to the Board. It was within the Board's power to correct any alleged error in that regard. Because the petitioners failed to take advantage of the opportunity to raise that argument before the Board, that argument is unexhausted, and this Court lacks jurisdiction to review it. I have a question of curiosity because I'm not that familiar with DACA, but just out of curiosity, it talks about when they arrived as children. Now, the older daughter, the immigrant daughter, is now 17. Correct. Does the applicability of DACA expire, or is it still always tied to the arrival age? Your Honor, in terms of eligibility requirements, DACA is always tied to the age of the applicant when he or she first arrived in the United States. So essentially, the minor petitioner would not age out of the DACA eligibility requirements. When granted DACA, there is an expiration date as to the grant, and periodically the beneficiary does have to renew the DACA status. However, the age that the applicant entered the United States would still be the controlling factor in terms of eligibility. All right. And I just had a question, I guess, on procedurally how it is we can rule on your motion for remand as to the daughter. Do we have to grant the petition for review and then remand it? Could we remand it without granting a petition for review? How does that work?  Correct, Your Honor. There's a pending motion to sever the minor petitioner, Mashid Hussain, from this case and remand her proceedings to the board so that the board can administratively close her removal proceedings. So we're asking the court essentially to take two actions with regard to the minor petitioner, sever her from the case and not grant the petition as to her, but simply remand her proceeding alone to the agency so that it can administratively close. And when the agency does that, there's no final order of removal to execute against her. So we could grant a motion to sever and remand, which doesn't have to be predicated on some grant of the petition for review. Is that what you're saying? Yes, Your Honor. All right. And as to the remaining two petitioners, Mr. Hussain and his wife, Ms. Habeed, the government requests that the court deny the petition for review because the adverse credibility finding is supported by substantial evidence. All right. Thank you, Ms. Martin. Mr. Kowalski, you say time for a vote. Thank you, Your Honors. With respect to the credibility issue, I would agree with counsel for the government that there are significant challenges with respect to their testimony then. However, the divorce is an event of such magnitude that it really has created two separate cases. And again, one or both or neither of them may now have a viable claim, but that is something that only an immigration judge in a contested hearing could evaluate. That just doesn't help me understand how the divorce affects a credibility determination, which was made with regard to testimony that was given. I mean, I don't know if you're saying they're more likely to be truthful now that they're divorced. I just don't understand how that would affect what they said before. When they were testifying in front of Judge McFaul, they were together in court. There was no sequestration. Now, if the case is remanded and there are two separate hearings, they will be testifying separately, and one could argue that they will be more candid or— They probably took an oath to be candid when they testified in that earlier hearing, didn't they? Correct. And human nature being what it is, husbands and wives will influence one another's testimony when present in the same courtroom. If they're now divorced and separated— Well, that argument just solidifies for me that the judge was correct in determining that the testimony wasn't credible. All right. Thank you, Mr. Kowalski. Thank you. The case is under submission.